IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DAVID WALLACE, #K69263, a/k/a ALZONTA MAGEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| - vs- | ) ) | No. 09-1286 |
| MANUEL ROJAS, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME, Defendants, GERARDO ACEVEDO, RICHARD GERALD, CHERYL HINTHORNE, STEVE NOTT, MANUEL ROJAS, and JAMES RUNDLE, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Memorandum of Law in support of Defendants' Motion for Summary Judgment, state as follows:

### INTRODUCTION

Plaintiff, David Wallace, #K69263, is an inmate with the Illinois Department of Corrections currently incarcerated at Pinckneyville Correctional Center. At all times relevant to his Complaint, Plaintiff was incarcerated at Hill Correctional Center. Plaintiff filed his Complaint alleging violations of his First Amendment rights as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff is Jewish. He claims that his requests to have Sabbath days off went unanswered and that he was sent to segregation for refusing to work on his Sabbath day. Defendants

assert that Plaintiff's rights were not violated and request summary judgment in their favor.

## UNDISPUTED MATERIAL FACTS

1. At all times relevant to Plaintiff's Complaint, Plaintiff was incarcerated at Hill Correctional Center. (Plaintiff's Complaint, Doc. 1, p. 7, and Plaintiff's Dep., p, 4, ll. 1-4).

2. Plaintiff is Jewish. (Exhibit 1, Offender Tracking System Printout, Plaintiff's Dep., p. 16, ll. 16-18).

3. Plaintiff was working in the dietary unit at Hill Correctional Center. (Plaintiff's Dep., p. 6, ll. 16-24).

4. On October 11, 2008, Hill Correctional Center was on a Level 4 Lockdown. (Doc. 1, p. 8, Exhibit 2, Disciplinary Report).

5. On October 11, 2008, Plaintiff was called down to dietary to work. (Plaintiff's Dep., p. 8, ll. 1-4).

6. Upon his arrival in the dietary unit, Plaintiff refused to work. (Plaintiff's Dep., p. 9, ll. 4-9).

7. Plaintiff claims that Correctional Officer Ross told him that Major Nott said that if anyone refused to work, they would be walked to segregation. (Plaintiff's Dep., p. 9, ll. 13-17).

8. Plaintiff admits he was not present when Major Nott told Officer Ross this policy. (Plaintiff's Dep., p. 12, ll. 11-14).

9. Plaintiff claims that Major Nott sent Plaintiff to segregation for refusing to work on a holy day. (Plaintiff's Dep., p. 6, ll. 8-10).

10. Plaintiff admits that he did not speak with Major Nott that day. (Plaintiff's Dep., p. 12, ll. 5-6).

11. Plaintiff does not recall any other allegations he may have against Major Nott. (Plaintiff's Dep., p. 12, ll. 19-21).

12. Plaintiff claims that Defendant Gerald had some words for him; that Defendant Gerald hollered at him something about working, and that was all. (Plaintiff's Dep., p. 12, ll. 22-25, p. 13, ll. 1-2).

13. Plaintiff does not recall if Defendant Gerald told him that if he refused to work he would be sent to segregation. (Plaintiff's Dep., p. 13, ll. 3-5).

14. Plaintiff did not hear Defendant Gerald tell Correctional Food Supervisor II (CFSS II) Henefent to walk Plaintiff to segregation. (Plaintiff's Dep., p. 13, ll. 6-18).

15. Plaintiff claims that in the disciplinary report he received, which was written by CFSSII Henenfent, it states that Defendant Gerald told CFSSII Henenfent to walk Plaintiff to segregation. (Plaintiff's Dep., p. 13, ll. 6-16). The disciplinary report states that CFSSII Henenfent gave Plaintiff a direct order to work on the west line and Plaintiff refused. (Exhibit 2). There is no mention of Defendant Gerald in the disciplinary report. (Exhibit 2).

16. Plaintiff does not recall any other allegations against Defendant Gerald. (Plaintiff's Dep., p. 13, ll. 23-25).

17. Plaintiff claims that when he arrived in the dietary unit he told Defendant Hinthorne, CFSSII Henefent, and Correctional Officer Ross that he was refusing to work. (Plaintiff's Dep., p. 8, ll. 13-25, p. 9, ll. 1-9).

18. Plaintiff admits that at this time Defendant Hinthorne did not say anything to him. (Plaintiff's Dep., p. 9, ll. 18-20).

19. Plaintiff further admits that Defendant Hinthorne was going to let him stay in dietary but that Defendant Gerald did not want him to stay there. (Plaintiff's Dep., p. 10, ll. 7-10, p. 11, ll. 3-6).

20. Plaintiff then states that Defendant Hinthorne told a lieutenant to take Plaintiff to segregation. (Plaintiff's Dep., p. 11, ll, 13-16).

21. Plaintiff admits that he was not present when Defendant Hinthorne told the lieutenant to take him to segregation. (Plaintiff's Dep., p. 11, ll. 17-19).

22. When asked what his claims were against Defendant Hinthorne, Plaintiff stated that he could not remember. (Plaintiff's Dep., p. 14, ll. 1-5).

23. Defendant Rundle is the dietary manager at Hill Correctional Center. (Doc. 1, p. 4, Plaintiff's Dep., p. 14, ll. 18-19).

24. When asked how Defendant Rundle violated his rights, Plaintiff responded that he did not remember. (Plaintiff's Dep., p. 14, ll. 20-21).

25. Defendant Acevedo was the warden at Hill Correctional Center. (Doc 1, p. 3).

26. Plaintiff claims that Defendant Acevedo denied his requests for religious days off saying that he did not honor them. (Plaintiff's Dep., p. 14, ll. 22-25).

27. Plaintiff does not recall when he made these requests or how many requests he made. (Plaintiff's Dep., p. 15, ll. 2-12).

28. Plaintiff claims that he did speak with Warden Acevedo, but does not recall exactly when. (Plaintiff's Dep., p. 15, ll. 13-20). Plaintiff claims that he spoke with Warden Acevdeo while he was on a hunger strike. (Plaintiff's Dep., p. 15, ll. 17-20).

29. Plaintiff does not recall any other claims against Defendant Acevedo. (Plaintiff's Dep., p. 17, ll. 15-17).

30. Plaintiff claims that Defendant Rojas assisted in the denial of his request for religious days off. (Plaintiff's Dep., p. 18, ll. 8-13).

31. When asked how Defendant Rojas was involved in this denial, Plaintiff did not know. (Plaintiff's Dep., p. 18, ll. 14-15). Plaintiff went on to state that Defendant Rojas was consulted in response to Plaintiff's grievance. (Plaintiff's Dep, p. 18, ll. 14-18).

32. Plaintiff admits that he refused to speak with Defendant Rojas. (Plaintiff's Dep., p. 19, ll. 1-2).

33. Plaintiff worked the lunch shift, Monday through Friday. (Plaintiff's Dep., p. 6, ll. 23-25, p. 7, ll. 1-6).

34. Plaintiff admits that he was regularly scheduled to be off work on the Sabbath. (Plaintiff's Dep., p. 16, ll. 23-24).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312-13 (7th Cir.1986). A court must enter summary judgment against the plaintiff when the plaintiff fails to come forward with evidence that would reasonably permit a finder of fact to find in plaintiff's favor on a material question. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## ARGUMENT

**I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT CLAIMS FOR LACK OF PERSONAL INVOLVEMENT**

The free exercise of religion is protected by the First Amendment of the constitution. An inmate retains the right to exercise his religious beliefs in prison. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). The court must balance [an inmate's] right to be afforded a reasonable opportunity to exercise the religious freedom guaranteed by the First and Fourteenth Amendments against the legitimate penological goals of the prison. *Maddox v. Love,* 655 F.3d 709, 719, (7th. Cir. 2011). This test is less restrictive than that ordinarily applied to infringements on constitutional rights in consideration of the need to give appropriate deference to prison officials, avoiding unnecessary judicial intrusion into security problems and other prison concerns. *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). In order to prevail on a First Amendment free exercise claim, Plaintiff must show that his right to practice his religion was burdened in a significant way. *Kaufman,* 419 F.3d at 683. The

Seventh Circuit has explained that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties Union for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

To recover damages under a § 1983 claim, a plaintiff must establish that a defendant was personally responsible for the violation of a constitutional right. *Gentry v.Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) "The doctrine of respondeat superior does not apply to §1983; thus to be held liable a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A defendant is personally responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Chavez*, 251 F.3d at 652. Thus, liability can attach without the defendant directly participating in the constitutional deprivation but only where the supervisor, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Chavez*, 251 F.3d at 652, *quoting Lanigan v. Village of East Hazel Crest*, 110 F. 3d 467, 477 (7th Cir. 1997). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez*, 251 F.3d at 651, *quoting Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Chavez,* 251 F.3d at 651.

### A. Defendant Nott

Plaintiff claims that his rights were violated when he was walked to segregation after refusing to work on a holy day. Plaintiff admits that upon arrival in the dietary unit, he refused to work. (Undisputed Material Fact, # 6). Plaintiff claims Correctional Officer Ross told Plaintiff that it was the policy of Defendant Nott that if anyone refused to work they would be sent to segregation. (Undisputed Material Fact #7). Plaintiff admits that he was not present when Major Nott spoke with Officer Ross. (Undisputed Material Fact #8). Plaintiff further claims that Major Nott had Plaintiff sent to segregation for refusing to work. (Undisputed Material Fact #9). However, Plaintiff admits that he never spoke with Major Nott that day. (Undisputed Material Fact #10). As Plaintiff admits that he had no involvement with Defendant Nott on the day in question, Defendant Nott is entitled to summary judgment on Plaintiff's claims for lack of personal involvement.

### B. Defendant Gerald

Plaintiff claims that Defendant Gerald hollered at him about working. (Undisputed Material Fact #12). Plaintiff admits that he does not recall Defendant Gerald telling him that if he refused to work he would be sent to segregation. (Undisputed Material Fact #13). Plaintiff further claims that Defendant Gerald ordered CFSSII Henenfent to walk Plaintiff to segregation. (Undisputed Material Fact #15). Plaintiff claims this is written in the disciplinary ticket he received from CFSSII Henenfent. (Undisputed Material Fact #15). However, Plaintiff admits that he did not hear Defendant Gerald tell CFSSII Henenfent to have Plaintiff taken to segregation. (Undisputed Material Fact #14). Additionally, the disciplinary report in question makes

no reference to Defendant Gerald. (Undisputed Material fact # 15). Plaintiff did not recall any other allegations he had against Defendant Gerald. Plaintiff has failed to point to any interaction between himself and Defendant Gerald which would constitute a violation of his First Amendment Rights. Defendant Gerald had no involvement in Plaintiff being sent to segregation. The disciplinary ticket in question states that Plaintiff was given a direct order to report to work on the west line and he refused. (Undisputed Material Fact #15). There is no mention of Defendant Gerald or any defendant in the body of the disciplinary ticket. (Exhibit 2). Defendant Gerald had no personal involvement in Plaintiff's allegations and for this reason he should be awarded summary judgment.

    **C.**    **Defendant Hinthorne**

Plaintiff claims that Defenant Hinthorne told a lieutenant to take Plaintiff to segregation. (Undisputed Material Fact #20). Again, Plaintiff admits that he was not present for this conversation. (Undisputed Material Fact #21). When asked what were his claims against Defendant Hinthorne, Plaintiff could not remember. (Undisputed Material Fact #22). Plaintiff has failed to point to any activities on the part of Defendant Hinthorne that would amount to a violation of his constitutional rights. Instead, Plaintiff admits that when he arrived in the dietary unit and refused to work, Defendant Hinthorne did not respond. (Undisputed Material Facts #18 and #19). Plaintiff also does not allege that Defendant Hinthorne had any knowledge of anyone else taking actions that would violate Plaintiff's First Amendment rights. Because Plaintiff has failed to point to any actions on the part of Defendant Hinthorne that would

violate his constitutional rights, Defendant Hinthorne requests summary judgment in her favor.

### D. Defendants Rundle

When asked what his allegations against Defendant Rundle were, Plaintiff stated that he did not remember. (Undisputed Material Fact #24). As Plaintiff was unable to articulate any way in which Defendant Rundle violated his constitutional rights, Defendant Rundle should be awarded summary judgment for lack of personal involvement.

### E. Defendant Rojas

Plaintiff claims that Defendant Rojas assisted in the denial of his requests to have certain religious holidays off from work. (Undisputed Material Fact #30). When asked how Defendant Rojas assisted in this denial, Plaintiff could not recall. (Undisputed Material Fact #31). Plaintiff later stated that Defendant Rojas was consulted for a response to one of Plaintiff's grievances. Plaintiff further admits that he would refuse to speak with Defendant Rojas. (Undisputed Material Fact #32). None of these alleged actions amount to a violation of Plaintiff's constitutional rights. They do not amount to involvement in the violation of Plaintiff's rights by someone else. Defendant Rojas had no involvement in Plaintiff's constitutional rights and therefore should be awarded summary judgment.

### F. Defendant Acevedo

Plaintiff claims that Defendant Acevedo denied his requests to have various religious holidays off from work. (Undisputed Material Fact #26). Plaintiff admits he was already scheduled to not work on his regular Sabbath days. (Undisputed Material

Fact #33). Plaintiff claims that his request for other religious holidays is what was being denied. (Plaintiff's Dep., p. 16, ll. 24-15, p. 17, ll. 1-7). Plaintiff does not recall how many requests he made to Defendant Acevedo or when he made those requests. (Undisputed Material Fact #27). Plaintiff states that he has spoken with Defendant Acevedo but does not recall when. (Undisputed Material Fact #28). Plaintiff believes it was sometime while Plaintiff was on a hunger strike. (Undisputed Material Fact #28). Plaintiff does not recall any other allegations he may have against Defendant Acevedo. (Undisputed Material Fact #29). Plaintiff attached to his Complaint one request slip which he submitted requesting an interview with Defendant Acevedo to discuss his holy days. (Attached as Exhibit 3). This document has written on the bottom that "we do not honor days off" and appears to have the initials Ra. (Exhibit 3). Plaintiff points to this document in support of his claim that Defendant Acevedo refused his request about religious holidays. This piece of paper is not enough to show any involvement on the part of Defendant Acevedo in any violation of Plaintiff's constitutional rights. It is unclear who wrote the response on the bottom of the request slip, but Defendant Acevedo's first name is Gerardo, his initials are not Ra. For these reasons, Defendant Acevedo requests summary judgment in his favor on Plaintiff's complaint.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RLUIPA CLAIMS AGAINST THEM IN THEIR INDIVIDUAL CAPACITY

Plaintiff can not bring suit against state officials in their individual capacities for damages under RLUIPA. Section 3 of RLUIPA states that a "person may assert a violation of this chapter as a claim ... in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a). Government is defined as "any other

person acting under color of State law. 42 U.S.C. §2000cc-5(4)(a). Though the statute contemplates individual capacity liability, the Court in *Nelson v. Miller* explored whether a statute enacted through the Spending Clause should be interpreted as imposing individual liability on persons who do not themselves, receive federal funds. *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009).

In *Nelson*, 570 F.3d 868, a Tamms inmate sued prison officials for violations of among other things, the First Amendment and RLUIPA. The Court in *Nelson* held that damages against the defendant in his official capacity under RLUIPA were barred by the Eleventh Amendment. *Nelson*, 570 F.3d at 883-84. Further the Court held that the plain language of RLUIPA did not allow for damages against defendants in their individual capacities. *Nelson*, 570 F.3d at 889. Therefore, following *Nelson*, there are no damage claims under RLUIPA and the only relief available is for a prospective injunction. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's RLUIPA claims against them in their individual capacities.

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants are entitled to qualified immunity due to being sued in their individual capacities. In order to defeat a claim of qualified immunity, a plaintiff must prove the defendant(s) violated a constitutional right clearly established at the time of the alleged misconduct. *McGrath v. Gillis*, 44 F.3d 567, 670 (7th Cir. 1995). Plaintiff has the burden of establishing the existence of a clearly established constitutional right. *Id*. at 570 (*citing Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988)). Clearly established rights must be proven through closely analogous cases. *Id*. at 570. Therefore, through qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

To determine if an official is entitled to qualified immunity, a Court considers: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. Saucier v. Katz, 533 U.S. 194, 200 (2001); see also Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (Saucier's procedure should not be regarded as inflexible; district courts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of a particular case). Plaintiff has the burden of establishing the existence of a clearly established constitutional right. McGrath, 44 F.3d at 570, citing Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). Clearly established rights must be proven through closely analogous cases. McGrath, 44 F.3d at 570. Therefore, through qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In the instant case, Plaintiff has failed to show that any of the Defendants were involved in any violation of his constitutional rights. Plaintiff has not shown that any defendant was involved in forcing him to go to segregation for not working on a religious holy day. None of the Defendants wrote Plaintiff the disciplinary ticket which

resulted in his being walked to segregation. (Undisputed Material Fact #15). Plaintiff did not hear any of the Defendants state that if he refused to work he would be sent to segregation. (Undisputed Material Facts #'s 8,13, 14, 21, 24). With regards to his claim that he was denied religious holidays off from work, Plaintiff admits that he was already off on his Sabbath day. (Undisputed Material Fact #33). Plaintiff has not identified any actions on the part of Defendants Acevedo or Rojas which would show that Plaintiff's clearly established rights had been violated. For these reasons, the Defendants are entitled to qualified immunity on Plaintiff's First Amendment claims.

## CONCLUSION

Plaintiff has pointed to no instance in which any of the Defendants were personally involved in any violation of Plaintiff's constitutional rights. Additionally, the defendants are entitled to qualified immunity. For these reasons, the Defendants Request summary judgment in their favor.

Respectfully submitted,

GERARDO ACEVEDO, RICHARD GERALD, CHERYL HINTHORNE, STEVE NOTT, MANUEL ROJAS, and JAMES RUNDLE,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois

By: s/ Erin L. O'Boyle
Erin L. O'Boyle, #6300442
Assistant Attorney General
Attorney for Defendants
500 South Second Street
Springfield, Illinois 62706
(217) 782-9026 Phone
(217) 524-5091 Fax
E-Mail: EO'Boyle@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DAVID WALLACE, K69263, <br> a/k/a ALZONTA MAGEE, <br><br> Plaintiff, <br><br> - vs- <br><br> MANUEL ROJAS, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 09-1286 <br> ) <br> ) <br> ) <br> ) |

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, the foregoing document, Memorandum of Law in Support of Defendants' Motion for Summary Judgment, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

    None

and I hereby certify that on March 30, 2012, a copy of the foregoing document was mailed by United States Postal Service, to the following non-registered participant(s):

    David Wallace, #K69263
    a/k/a Alzonta Magee
    Pinckneyville Correctional Center
    Post Office Box 999
    Pinckneyville, Illinois 62274-3410

                                           Respectfully Submitted,

                                            s/ Erin L. O'Boyle
                                           Erin L. O'Boyle, #6300442
                                           Assistant Attorney General
                                           500 South Second Street
                                           Springfield, Illinois  62706
                                           (217) 782-9026  Phone
                                           (217) 524-5091  Fax
                                           E-Mail:  EO'Boyle@atg.state.il.us